UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
ARIEL ANTONIO PIMENTEL COLLADO, on              :
behalf of himself and all others similarly situated,   :
                                                :
                          Plaintiff,            :
                                                :
            -against-                           :          **COMPLAINT**
                                                :
THE AMBER AVALON CORP. d/b/a HOTEL              :
CHANTELLE, GOOD PAL CHANTELLE CORP.            :          **FLSA COLLECTIVE AND**
d/b/a HOTEL CHANTELLE, GOOD PAL RAVEL          :          **RULE 23 CLASS ACTION**
CORP. d/b/a RAVEL HOTEL, RAVEL HOTEL           :
LLC d/b/a RAVEL HOTEL, 163 HOPE STREET         :
LLC f/d/b/a/ THE REGAL DINER AND               :
COCKTAIL BAR, RAVI PATEL, and SETH             :
LEVINE,                                         :
                                                :
                          Defendants.           :
------------------------------------------------------------------------ X

Plaintiff Ariel Antonio Pimentel Collado ("Plaintiff" or "Pimentel"), on behalf of

himself and all others similarly situated, by his attorneys Pechman Law Group PLLC,

complaining of Defendants The Amber Avalon Corp. d/b/a Hotel Chantelle, Good Pal

Chantelle Corp. d/b/a Hotel Chantelle, Good Pal Ravel Corp. d/b/a Ravel Hotel, Ravel

Hotel LLC d/b/a Ravel Hotel, 163 Hope Street LLC f/d/b/a The Regal Diner and

Cocktail Bar (collectively, the "Corporate Defendants"), Ravi Patel, and Seth Levine

(collectively, the "Individual Defendants" and together with the Corporate Defendants,

the "Defendants"), alleges:

## NATURE OF THE ACTION

1.      Throughout Pimentel's employment with Defendants as a line cook,

Defendants unlawfully paid Pimentel a biweekly salary that failed to compensate him at

the statutory minimum wage rate and failed to provide him with overtime wages at time

and a half for hours he worked in excess of 40 per workweek.  Moreover, Defendants

did not pay Pimentel "spread-of-hours" pay—an additional hour's pay at the statutory

minimum wage rate—on days when he worked shifts in excess of 10 hours, and failed to furnish Pimentel with (1) a wage notice at his time of hiring or his wage rates changed, and (2) accurate wage statements accompanying each payment of wages.

2.      Pimentel brings this action on behalf of himself and all other similarly situated non-managerial Kitchen Workers seeking declaratory and injunctive relief and the recovery of unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs under the FLSA, 29 U.S.C. § 201 *et seq.*, and the NYLL. § 190 *et seq.*

## JURISDICTION

3.      The Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Pimentel's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because Defendants conduct business in the Southern District of New York and many of the events and omissions giving rise to Pimentel's claims occurred in the Southern District of New York.

## THE PARTIES

**Plaintiff Ariel Antonio Pimentel Collado**

5.      Pimentel resides in New York County, New York.

6.      Defendants employed Pimentel as a line cook from approximately May 10, 2013 until September 27, 2018.

7.      Throughout his employment with Defendants, Pimentel was an employee engaged in interstate commerce or in the production of goods for interstate commerce.

**Defendant The Amber Avalon Corp.**

8.      The Amber Avalon Corp. is a New York corporation that, along with Good Pal Chantelle Corp., owns, operates, and does business as Hotel Chantelle ("Hotel Chantelle"), located at 92 Ludlow Street, New York, New York 10002.

9.      Hotel Chantelle is a three-floor restaurant, nightclub, and events space located in Manhattan's Lower East Side.

10.     A New York State Division of Corporation's corporate entity filing identifies 92 Ludlow Street, New York, New York 10002 as the location of The Amber Avalon Corp.'s principal executive office.

11.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies The Amber Avalon Corp. as the holder of a liquor license at 92 Ludlow Street, New York, New York 10002.

12.     The Amber Avalon Corp. employed Pimentel and the Kitchen Workers within the meanings of the FLSA and the NYLL.

13.     Throughout Plaintiff's employment, The Amber Avalon Corp. employed more than 11 employees.

14.     The Amber Avalon Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

15.     In the three years preceding the date this Complaint was filed, The Amber Avalon Corp. had an annual gross volume of sales made or business done in excess of $500,000.

**Defendant Good Pal Chantelle Corp.**

16.     Good Pal Chantelle Corp. is a New York Corporation that, along with The Amber Avalon Corp., owns, operates, and does business as Hotel Chantelle ("Hotel Chantelle"), located at 92 Ludlow Street, New York, New York, 10002.

17.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Good Pal Chantelle Corp. as the holder of a liquor license at 92 Ludlow Street, New York, New York 10002.

18.     Good Pal Chantelle Corp. employed Pimentel and the Kitchen Workers within the meanings of the FLSA and the NYLL.

19.     Throughout Plaintiff's employment, Good Pal Chantelle Corp. employed more than 11 employees.

20.     Good Pal Chantelle Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

21.     In the three years preceding the date this Complaint was filed, Good Pal Chantelle Corp. had an annual gross volume of sales made or business done in excess of $500,000.

**Defendant Good Pal Ravel Corp.**

22.     Good Pal Ravel Corp. is a New York Corporation that, along with Ravel Hotel LLC, owns, operates, and does business as Ravel Hotel ("Ravel Hotel"), including Ravel Hotel's Penthouse 808 restaurant, located at 8-08 9th Street, Long Island City, New York, 11101.

23.     Penthouse 808 is a restaurant situated on the top floor of Ravel Hotel "[f]eaturing an extensive menu of Greek/Mediterranean inspired fare, as well as our

traditional sushi menu paying homage to the history of Penthouse808. (By Executive Chef Seth Levine)." *See* https://www.ravelhotel.com/the-penthouse (last accessed December 4, 2020).

24.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Good Pal Ravel Corp. as the holder, along with Ravel Hotel LLC, of a liquor license at 8-08 9th Street, Long Island City, New York, 11101.

25.     Good Pal Ravel Corp. employed Pimentel and the Kitchen Workers within the meanings of the FLSA and the NYLL.

26.     Throughout Plaintiff's employment, Good Pal Ravel Corp. employed more than 11 employees.

27.     Good Pal Ravel Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

28.     In the three years preceding the date this Complaint was filed, Good Pal Ravel Corp. had an annual gross volume of sales made or business done in excess of $500,000.

**Defendant Ravel Hotel LLC**

29.     Ravel Hotel LLC is a New York Corporation that, along with Good Pal Ravel Corp., owns, operates, and does business as Ravel Hotel, including Ravel Hotel's Penthouse 808 restaurant, located at 8-08 9th Street, Long Island City, New York, 11101.

30.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Ravel Hotel LLC. as the holder, along with Good Pal Ravel Corp., of a liquor license at 8-08 9th Street, Long Island City, New York, 11101.

31.     Ravel Hotel LLC employed Pimentel and the Kitchen Workers within the meanings of the FLSA and the NYLL.

32.     Throughout Plaintiff's employment, Ravel Hotel LLC employed more than 11 employees.

33.     Ravel Hotel LLC has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

34.     In the three years preceding the date this Complaint was filed, Ravel Hotel LLC had an annual gross volume of sales made or business done in excess of $500,000.

**Defendant 163 Hope Street LLC**

35.     163 Hope Street LLC is a New York Corporation that at all relevant times owned, operated, and  did business as The Regal Diner and Cocktail Bar ("The Regal"), located at 163 Hope Street, Brooklyn, New York, 11211.

36.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies 163 Hope Street LLC as the holder of a liquor license at 163 Hope Street, Brooklyn, New York 11211.

37.     163 Hope Street LLC employed Pimentel and the Kitchen Workers within the meanings of the FLSA and the NYLL.

38.     Throughout Plaintiff's employment, 163 Hope Street LLC employed more than 11 employees.

39.     163 Hope Street LLC has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

40.     In the three years preceding the date this Complaint was filed, 163 Hope Street LLC had an annual gross volume of sales made or business done in excess of $500,000.

**Defendant Ravi Patel**

41.     On information and belief, throughout Plaintiff's employment, Ravi Patel was a principal of Hotel Chantelle, Ravel Hotel, and The Regal.

42.     Corporate entity information maintained by the New York State Division of Corporations identifies Patel as the Chief Executive Officer of The Amber Avalon Corporation.

43.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Patel as a principal of The Amber Avalon Corp.

44.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Patel as a principal of the Good Pal Ravel Corp. and Ravel Hotel LLC.

45.     Corporate entity information maintained by the New York State Division of Corporations identifies Patel as the recipient for service of process on Ravel Hotel LLC.

46.     A Ravel Hotel company document titled "Penthouse 808 Contact List" identifies Patel as Ravel Hotel's owner.

47.     Patel is identified as a partner of The Regal in media reports. *See, e.g.*, *The Regal: Diner & Cocktail Bar – From the Hotel Chantelle Guys*, FOOD & BEVERAGE MAGAZINE, Jan. 2016, https://www.fb101.com/2016/01/the-regal-diner-cocktail-bar-from-the-hotel-chantelle-guys/ (last accessed November 19, 2020) (noting that "restauranteurs and partners of Hotel Chantelle: Seth Levine [], Ravi Patel, Frank Alessio, and Kyle O'Brien, have teamed up with . . . Delores Hoskins Auguet, to create [The Regal]").

48.     As a principal of Hotel Chantelle, Ravel Hotel and The Regal, Patel held and exercised power and authority over personnel decisions at Hotel Chantelle, Ravel Hotel, and The Regal, including the power to discipline employees, hire and fire employees, set employee schedules, set employee wage rates, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

49.     Patel exercised his power and authority through managers at Hotel Chantelle, Ravel Hotel and The Regal.

50.     Throughout Pimentel's employment, Patel was responsible for managing overall business operations at Hotel Chantelle, Ravel Hotel, and The Regal.

51.     Patel occasionally visited Hotel Chantelle, Ravel Hotel, and The Regal on weekends to perform general management duties.

52.     Patel exercised sufficient control over the operations of Hotel Chantelle, Ravel Hotel, and The Regal and over Pimentel's and the Kitchen Workers' employment to be considered Pimentel's and the Kitchen Workers' employer under the FLSA and NYLL.

**Defendant Seth Levine**

53.     Throughout Plaintiff's employment, Seth Levine was the executive chef and a principal of Hotel Chantelle, Ravel Hotel, and The Regal.

54.     Public filings including New York State Liquor Authority application filings identify Levine as an owner of Good Pal Chantelle Corp.

55.     The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Levine as a principal of the Good Pal Ravel Corp. and Ravel Hotel LLC.

56.     Hotel Chantelle's website describes Levine as "currently presid[ing] over five wildly popular restaurants including The Stand in Gramercy, Hotel Chantelle in the

LES and the Ravel Hotel in LIC." *See* https://hotelchantelle.com/dining (last accessed November 19, 2020).

57.    Ravel Hotel's website describes Levine as "currently presid[ing] over five restaurants including The Penthouse, Ravel Garden Grill, Profundo Day Club, Hotel Chantelle (Lower East Side) and The Regal (Williamsburg)." *See* https://www.ravelhotel.com/dining-drinks/our-chef (last accessed November 19, 2020).

58.    Levine has held himself out in the press as principal of Hotel Chantelle and Ravel Hotel. *See, e.g., Q&A with Seth Levine, Executive Chef,* GOLDMAN SACHS ALUMNI NETWORK, https://www.gsalumninetwork.com/s/1366/18/interior.aspx?sid=1366&gid=1&pgid=252&cid=3807&ecid=3807&crid=0&calpgid=402&calcid=1281 (last accessed November 19, 2020) (identifying Levine as "an Executive Chef and owner of Estate Garden Grill, Hotel Chantelle, Penthouse 808, Profundo Day Club, The Ravel Hotel and The Stand")

59.    Levine is identified partner of The Regal in media reports. *See supra*, ¶ 47.

60.    As the executive chef and a principal of Hotel Chantelle, Ravel Hotel, and The Regal, Levine held and exercised power and authority over personnel decisions at Hotel Chantelle, Ravel Hotel, and The Regal, including the power to discipline employees, hire and fire employees, set employee schedules, set employee wage rates, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

61.    Levine exercised his power and authority personally and through managers at Hotel Chantelle, Ravel Hotel and The Regal.

62.    Levine hired Pimentel and other Kitchen Workers.

63.    Levine set the wage rates of Pimentel and other Kitchen Workers.

64.     Levine transferred Pimentel between Hotel Chantelle, Ravel Hotel, and The Regal to perform work.

65.     Throughout Pimentel's employment, Levine set Pimentel's work schedule and communicated work schedules to Pimentel.

66.     Throughout Pimentel's employment, Levine was responsible for managing day-to-day kitchen operations at Hotel Chantelle and overseeing operations at Ravel Hotel and The Regal.

67.     Levine was present at Hotel Chantelle on a near-daily basis and directed Pimentel's and the Kitchen Workers' work duties.

68.     Levine exercised sufficient control over the operations of Hotel Chantelle, Ravel Hotel, and The Regal and over Pimentel's and the Kitchen Workers' employment to be considered Pimentel's and the Kitchen Workers' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

**Pimentel's Hours Worked and Pay**

69.     Defendants employed Pimentel as a line cook from approximately May 10, 2013, until approximately September 27, 2018.

70.     Levine was directly responsible for hiring Pimentel and setting his work schedule and wage rate.

71.     Initially, Defendants, through Levine, assigned Pimentel to work as a line cook at Hotel Chantelle, with occasional shifts (approximately twice per month) at Ravel Hotel.  On days when Defendants assigned Pimentel to work shifts at Ravel Hotel, Levine would communicate work assignments to Pimentel.

72.     From approximately May 10, 2013, until January 1, 2017, Pimentel worked the following schedule at Hotel Chantelle: (1) 8.5-hour shifts (3:00 p.m. to 11:30 p.m.) on

Tuesdays, Wednesdays, Thursdays, and Fridays; (2) a 13-hour shift (10:00 a.m. to 11:00 p.m.) on Saturdays; and (3) a 13- or 14-hour shift (9:00 a.m. or 10:00 a.m. to 11:00 p.m.) on Sundays, for a total of 60 or 61 hours per workweek.

73.     On December 31, 2016, Pimentel suffered an injury to his hand while working at Hotel Chantelle.  He did not work for approximately 3 months while he was recovering from his injury.

74.     When Pimentel returned to work in April 2017, he worked for approximately one week at Hotel Chantelle.

75.     Defendants then assigned him to work as a line cook at Ravel Hotel's Penthouse 808 restaurant.  Levine communicated this assignment to Pimentel.

76.     From approximately April 2017 through June 2017, Pimentel worked the following schedule at Ravel Hotel: (1) 8.5-hour shifts (3:00 p.m. to 11:30 p.m.) on Tuesdays, Wednesdays, Thursdays, and Fridays; (2) a 13-hour shift (10:00 a.m. to 11:00 p.m.) on Saturdays; and (3) a 13- or 14-hour shift (9:00 a.m. or 10:00 a.m. to 11:00 p.m.) on Sundays, for a total of 60 or 61 hours per workweek.

77.     In approximately July 2017, Defendants assigned Pimentel to work at The Regal.  Levine communicated this assignment to Pimentel.

78.     From July 2017 until September 2018, Pimentel worked the following schedule at The Regal: (1) 10.5- to 11-hour shifts (3:00 p.m. to 1:30 or 2:00 a.m.) on Mondays, Tuesdays Wednesdays, and Fridays, and Sundays; and (2) a 14.5- or 15-hour shift on Saturdays (10:00 a.m. to 1:30 or 2:00 a.m.), for a total of 67 to 70 hours per workweek.

79.     During the period (approximately May 10, 2013 through June 2017) when Defendants assigned Pimentel to work at Hotel Chantelle and Ravel Hotel, Defendants

paid Pimentel once every two weeks on checks issued by The Amber Avalon Corp. Defendants paid Pimentel on two checks every two weeks.

80.     After Defendants transferred Pimentel to The Regal, he was paid once every two weeks on a single check issued by The Regal.

81.     From approximately May 10, 2013 through December 2015, Defendants paid Pimentel a salary of $1150 every two weeks, equivalent to $575 per week.

82.     From approximately January 2016 through December 2017, Defendants paid Pimentel a salary of $1350 every two weeks, equivalent to $675 per week.

83.     From approximately January 2018 through the end of his employment in September 2018, Defendants paid Pimentel a salary of $1800 every two weeks, equivalent to $900 per week.

84.     Defendants did not furnish Pimentel with a wage notice at the time of his hire or whenever there was a change in his wage rate.

85.     Defendants did not provide Pimentel with accurate wage statements accompanying each payment of wages reflecting, *inter alia*, his regular and overtime wage rates and hours worked.

86.     Many of the paystubs Defendants provided Pimentel reflected zero hours worked.  Other paystubs underreported the total hours Pimentel worked during the given pay period.

87.     For example, Pimentel's paystub for the pay period from September 3, 2018 to September 16, 2018 reflects that Pimentel worked from 10:10 a.m. until 6:10 p.m. on September 8, 2018 for a total of eight hours.  However, Pimentel's punch ticket from September 8, 2018 reflects that he worked from 10:10 a.m. until 12:51 a.m. on September 9, 2018, for a total of 14.69 hours.

**Hotel Chantelle, Ravel Hotel, and The Regal Operated as a Single Integrated Enterprise Employing Pimentel and the Kitchen Workers**

88.     Throughout Plaintiff's employment, the Corporate Defendants operated as a single integrated enterprise jointly employing Pimentel and the Kitchen Workers.

89.     Although registered as individual corporate entities, the Corporate Defendants at all relevant times were under common ownership and management.

90.     Specifically, as alleged *supra* in Paragraphs 41 through 82, Individual Defendants Patel and Levine are each principals of Hotel Chantelle and Ravel Hotel, and throughout Pimentel's employment were principals of The Regal.

91.      In these roles, the Individual Defendants exercised operational control and authority, including control and authority over personnel policies and practices, over each of the Corporate Defendants.

92.     The common ownership and management of the Corporate Defendants is reported in press releases and media reports. *See e.g.,* Del Signore, John, *Hotel Chantelle Crew Expands to Williamsburg with The Regal*, GOTHAMIST, Feb. 3, 2016, https://gothamist.com/food/hotel-chantelle-crew-expands-to-williamsburg-with-the-regal (last accessed November 19, 2020); *The Regal: Diner & Cocktail Bar – From the Hotel Chantelle Guys*, Food & Beverage Magazine, Jan. 2016, https://www.fb101.com/2016/01/the-regal-diner-cocktail-bar-from-the-hotel-chantelle-guys/ (last accessed November 19, 2020);

93.     The Individual Defendants' common ownership and management of the Corporate Defendants resulted in the common control of labor relations among the Corporate Defendants.

94.     Defendants transferred Pimentel and other Kitchen Workers among Hotel Chantelle, Ravel Hotel, and The Regal for work assignments.

95.     For example, Levine assigned Pimentel to work at Hotel Chantelle, Ravel Hotel, and The Regal at different points throughout his employment with Defendants.

96.     Regardless of whether he was assigned to work at Hotel Chantelle, Ravel Hotel, or The Regal, Pimentel received his work schedule from Levine.

97.     Regardless of whether he was assigned to work at Hotel Chantelle, Ravel Hotel, or The Regal, Pimentel's wage rate was set by Levine.

98.     For periods when Pimentel worked at Hotel Chantelle and Ravel Hotel, Defendants paid Pimentel on checks issues by The Amber Avalon Corp.

99.     For periods when Pimentel worked at The Regal, Defendants paid Pimentel on checks issued by The Regal.

100.    The Corporate Defendants utilized common employee handbooks.

101.    For example, the employee handbook distributed at Penthouse 808 restaurant (Ravel Hotel) bears the name Hotel Chantelle on its cover page.

102.    The Corporate Defendants transferred produce and frozen products among the respective kitchens at Hotel Chantelle, Ravel Hotel, and The Regal.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

103.    Pimentel brings the claims in this Complaint arising out of the FLSA on behalf of himself and all similarly situated Kitchen Workers employed by Defendants in the three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

104.    The FLSA Collective consists of at least 30 similarly situated Kitchen Workers who have been victims of Defendants' common policies and practices violating their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

105.    The FLSA Collective consists of persons who, during their employment with Defendants, fell into the category of non-managerial Kitchen Workers.

106.    Pimentel and the FLSA Collective are entitled to overtime wages under the FLSA, but were denied overtime wages by Defendants for hours worked in excess of 40 per workweek.

107.    Pimentel and the FLSA Collective are and have been similarly situated, have had substantially similar pay provisions, and are and have been subject to Defendants' decisions, plans, and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required overtime wage rates for hours worked over 40 per workweek.  Pimentel's claims as stated in this Complaint are essentially the same as those of the FLSA Collective.

108.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and/or policies violating the FLSA and the NYLL.  These patterns, practices, and/or policies include, *inter alia*:

  a.  failing to pay the FLSA Collective overtime wages for hours worked in excess of 40 per workweek; and

  b.  failing to keep full and accurate records of all hours worked by the FLSA Collective, as required by the FLSA.

109.    Defendants engaged in this unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

110.    Defendants' conduct has been intentional, willful, and in bad faith, and has caused significant monetary damage to the FLSA Collective.

111.    Defendants' practices and policies with respect to the payment of overtime wages have previously been the subject of a lawsuit filed in the Southern District of New York.  *See Veins v. Good Pal Chantelle Corp. et al.*, No. 20-cv-3807 (VSB).

112.     The FLSA Collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

113.     Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Gemstone's records.

114.     Those similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ACTION ALLEGATIONS

115.     Pimentel brings the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), on behalf of himself and a class consisting of all similarly situated non-managerial Kitchen Workers employed by Defendants in the past six years (the "Rule 23 Class").

116.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

117.     The size of the Rule 23 Class is at least 50 individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants.  The hours assigned and worked, the positions held, the rates of pay, and pay received for each Rule 23 Class member are also determinable from Defendants' records. For purposes of notice in this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

118.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.  All the class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all minimum, overtime, and spread-of-hours wages due, failing

to provide wage notices at the time of hire or when wage rates changed, and failing to furnish accurate wage statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Pimentel and other class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

119.    Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

      a.  whether Defendants employed the Rule 23 Class within the meaning of the NYLL;

      b.  whether Defendants compensated the Rule 23 Class for all hours worked up to 40 per workweek at the statutory minimum wage rate under the NYLL;

      c.  whether Defendants compensated the Rule 23 Class at the statutory overtime wage rate for all hours worked in excess of 40 per workweek as required by the NYLL;

      d.  whether Defendants provided the Rule 23 Class with spread-of-hours pay on days when they worked shifts in excess of 10 hours as required by the NYLL;

      e.  whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 146, as alleged herein;

      f.  whether Defendants failed to provide wage notices to the Rule 23 Class at the time of hire and when their wage rates changed as required by the NYLL; and

      g.  whether Defendants failed to provide the Rule 23 Class with accurate wage statements as required by the NYLL.

120.    Pimentel's claims are typical of the claims of the Rule 23 Class he seeks to represent.

121.    Pimentel and the Rule 23 Class work or have worked for Defendants as non-managerial Kitchen Workers within the six years prior to the filing of this action.

122.    Pimentel and the Rule 23 Class are entitled under the NYLL to be paid minimum and overtime wages and spread-of-hours pay, but were denied these wages by Defendants.

123.    Pimentel and the Rule 23 Class are entitled under the NYLL to receive wage notices at their time of hire and when their wage rates change and to receive accurate wage statements each time they are paid, but were not provided with wage notices or wage statements by Defendants.

124.    Pimentel and the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

125.    Pimentel and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

126.    Pimentel will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

127.    Pimentel has retained counsel competent and experienced in wage and hour litigation and class action litigation.

128.    There is no conflict between Pimentel and the Rule 23 Class members.

129.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual employees lack the

financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.

130.    Class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

131.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(NYLL – Unpaid Minimum Wages)**

132.    Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

133.    The NYLL and supporting New York State Department of Labor ("NYDOL") regulations require employers to pay employees a minimum wage for the first 40 hours worked in a workweek.  NYLL § 652; 12 NYCRR § 146-1.2.

134.    Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 NYCRR § 146 *et seq*.

135.    Defendants employed Pimentel and the Rule 23 Class within the meaning of the NYLL.

136.    As a result of Defendants' wage payment practices, Defendants failed to pay Pimentel and the Rule 23 Class the minimum wages to which they were entitled under the NYLL and its supporting NYDOL regulations.

137.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Pimentel and the Rule 23 Class minimum wages.

138.   As a result of Defendants' willful violations of the NYLL, Pimentel and the Rule 23 Class suffered damages and are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### SECOND CLAIM
### (FLSA – Unpaid Overtime Wages)

139.   Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

140.   The FLSA requires employers to pay employees overtime wages at a rate not less than one and one-half (1.5) times the employee's regular rate for all hours worked in excess of 40 hours per workweek.  29 U.S.C. § 207, *et seq*.

141.   Defendants are employers within the meaning of the FLSA, 29 U.S.C. § 203(d), and employed Pimentel and the FLSA Collective.

142.   Pimentel and the FLSA Collective are employees within the meaning of the FLSA, 29 U.S.C. § 203(e).

143.   Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Pimentel and the FLSA Collective overtime wages at a rate not less than one and one-half (1.5) times their regular rate for all hours worked in excess of 40 hours per workweek.

144.   Defendants were or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Pimentel and the FLSA Collective.

145.   As a result of Defendants' willful violations of the FLSA, Pimentel and the FLSA Collective suffered damages and are entitled to recover their unpaid overtime

wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## THIRD CLAIM
### (NYLL – Unpaid Overtime Wages)

146.    Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

147.    The NYLL and supporting NYDOL regulations require employers to pay employees overtime wages at a rate of one and one-half (1.5) times the employee's regular rate, which shall not be less than the minimum wage rate, for all hours worked in excess of 40 per workweek. 12 NYCRR § 146-1.4.

148.    Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 NYCRR § 146 *et seq*.

149.    Defendants employed Pimentel and the Rule 23 Class within the meaning of the NYLL.

150.    Defendants failed to pay Pimentel and the Rule 23 Class overtime wages to which they were entitled under the NYLL and its supporting NYDOL regulations.

151.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Pimentel and the Rule 23 Class overtime wages.

152.    As a result of Defendants' willful violations of the NYLL, Pimentel and the Rule 23 Class suffered damages and are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## FOURTH CLAIM
### (NYLL – Spread-of-Hours Pay)

153.    Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

154.    Defendants willfully failed to pay Pimentel and the Rule 23 Class additional compensation of one hour's pay at the basic statutory wage rate for each day during which they worked in excess of ten hours.

155.    By their failure to pay Pimentel and the Rule 23 Class spread-of-hours pay, Defendants willfully violated the NYLL § 650, *et seq.*, and supporting NYDOL regulations, including, but not limited to, 12 NYCRR § 146–1.6.

156.    As a result of Defendants' willful violations of the NYLL, Pimentel and the Rule 23 Class are entitled to recover unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### FIFTH CLAIM
### (NYLL § 191 – Frequency of Payments)

157.     Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

158.    Defendants paid Pimentel and the Rule 23 Class on a biweekly basis.

159.    Throughout his employment, Pimentel and the Rule 23 Class spent at least 25% of their working time performing physical tasks.

160.    Pimentel and the Rule 23 Class were "manual workers" within the meaning of the NYLL.

161.    Defendants should have paid Pimentel and the Rule 23 Class on a weekly basis, "and not later than seven calendar days after the end of the week in which the wages were earned." NYLL § 191(1)(a).

162.    Because Defendants failed to pay Pimentel and the Rule 23 Class on a weekly basis, in addition to other recovery available under the foregoing claims, Pimentel and the Rule 23 Class are entitled to recover liquidated damages equal to the wages that were paid a week late every biweekly period.

## SIXTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

163.    Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

164.    The NYLL's Wage Theft Prevention Act ("WTPA") requires employers to provide all employees with a written notice of wage rates at the time of hiring and whenever there is a change to an employee's rate of pay.  NYLL § 195(1).

165.    In violation of NYLL § 195(1), Defendants failed to furnish Pimentel and the Rule 23 Class at their time of hiring or whenever their rates of pay changed with a wage notice containing their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principle place of business, and a mailing address if different; the telephone number of the employer; and any other information required by law.

166.    As a result of Defendants' violations of NYLL § 195(1), Pimentel and the Rule 23 Class are entitled to recover statutory damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL § 198(1-b).

## SEVENTH CLAIM
### (NYLL WTPA – Failure to Provide Accurate Wage Statements)

167.    Pimentel repeats and incorporates all foregoing paragraphs as if fully set forth herein.

168.    The NYLL requires employers to provide employees with an accurate wage statement each time they are paid.  NYLL § 195(3).

169.    In violation of the NYLL, Defendants failed to furnish Pimentel and the Rule 23 Class with each payment of wages an accurate statement listing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

170.    As a result of Defendants' violations of NYLL § 195(3), Pimentel and the Rule 23 Class are entitled to recover statutory damages, reasonable attorneys' fees, and costs and disbursements of this action pursuant to NYLL § 198(1-d).

### PRAYER FOR RELIEF

WHEREFORE, Pimentel, on behalf of himself, the FLSA Collective, and the Rule 23 Class respectfully requests that this Court enter a judgment:

a.    certifying the case as a collective action for the violations of the FLSA alleged in the Complaint for the employees described herein; designating Pimentel as the representative of the FLSA Collective; and designating Pimentel's attorneys as counsel for the FLSA Collective;

b.    certifying the case as a class action pursuant to the NYLL and Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint for the class of employees described herein; certifying Pimentel as class representative, and designating Pimentel's attorneys as Class counsel;

c.    authorizing the issuance of notice at the earliest possible time to all non-managerial Kitchen Workers that were employed by Defendants during the three years immediately preceding the filing of this action.  This notice should inform them

that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

        d.     declaring that Defendants have violated the minimum wage provisions of the NYLL;

        e.     declaring that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

        f.     declaring that Defendants have violated the spread-of-hours provisions of the NYLL;

        g.     declaring that Defendants have violated the frequency of pay provisions of the NYLL;

        h.     declaring that Defendants have violated the wage notice provisions of the NYLL's WTPA;

        i.     declaring that Defendants have violated the wage statement provisions of the NYLL's WTPA;

        j.     declaring that Defendants' violations of the FLSA and NYLL were willful;

        k.     enjoining future violations of the FLSA and NYLL by Defendants;

        l.     awarding Pimentel and the Rule 23 Class unpaid minimum wages;

        m.     awarding Pimentel, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

        n.     awarding Pimentel and the Rule 23 Class unpaid spread-of-hours pay;

        o.     awarding Pimentel, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and NYLL;

p.      awarding Pimentel and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish wage notices pursuant to the NYLL and WTPA;

q.      awarding Pimentel and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish accurate wage statements pursuant to the NYLL and the WTPA;

r.      awarding Pimentel, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest under the FLSA and the NYLL;

s.      awarding reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

t.      awarding such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        December 10, 2020

PECHMAN LAW GROUP PLLC


By:      /s/ Louis Pechman
         Louis Pechman
         Galen C. Baynes
         488 Madison Avenue, 17th Floor
         New York, New York 10022
         Tel.: (212) 583-9500
         pechman@pechmanlaw.com
         baynes@pechmanlaw.com
         *Attorneys for Plaintiff, the Putative Rule
         23 Class, and the Putative FLSA Collective*