# PECHMAN LAW GROUP PLLC
### ATTORNEYS AT LAW

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

July 14, 2021

**VIA ECF**

Honorable Katharine H. Parker
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *Pimentel Collado v. The Amber Avalon Corp. et al.*
          20 Civ. 10410 (KHP)

Dear Judge Parker:

      We represent Plaintiff Ariel Antonio Pimentel Collado ("Pimentel") in the above-captioned matter, and submit this letter-motion jointly with counsel for Defendants The Amber Avalon Corp. d/b/a Hotel Chantelle ("Amber Avalon"), Good Pal Chantelle Corp. d/b/a Hotel Chantelle ("Good Pal Chantelle"), Good Pal Ravel Corp. d/b/a Ravel Hotel ("Good Pal Ravel"), Ravel Hotel LLC d/b/a Ravel Hotel ("Ravel Hotel"), 163 Hope Street LLC f/d/b/a The Regal Diner and Cocktail Bar ("163 Hope Street"), Ravi Patel, and Seth Levine (collectively "Defendants") to request that the Court approve the attached negotiated Settlement and Release Agreement (the "Agreement") (Ex. 1)[1] pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) as a fair and reasonable compromise of this FLSA action.

## FACTUAL AND PROCEDURAL HISTORY

      On December 10, 2020, Pimentel, through his counsel, Pechman Law Group PLLC ("PLG"), commenced this Action against Defendants by filing a complaint (the "Complaint") in the United States District Court, Southern District of New York (the "Court"), Docket No. 20-cv-10410 (KHP) (the "Action") (ECF No. 1).

      Through his Complaint, Pimentel alleged that he was a former line cook for each of

---

[1] Exhibits to this letter-motion are referred to by their corresponding exhibit number. Exhibits to the Parties' Agreement are referred to by their corresponding exhibit letter.

the corporate defendants[2] who was paid a weekly salary that failed to compensate him for hours worked in excess of forty per workweek at a rate of 1.5 times his regular hourly rate, as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Pimentel also alleged that: (1) he was not provided with spread-of-hours pay on days when he worked shifts in excess of ten hours as required by the NYLL; (2) was not provided with a wage notice and accurate wage statements as required by the NYLL's Wage Theft Prevention Act ("WTPA"); and (3) was unlawfully paid on a biweekly basis. Pimentel sought to recover, on behalf of himself and other similarly situated workers, unpaid overtime and spread-of-hours wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs.

Defendants filed their Answer on March 12, 2021, denying the allegations made in Pimentel's Complaint and asserting various defenses. (ECF No. 25). The Parties submitted a case management plan, and an initial conference was subsequently held before Judge Oetken on April 5, 2021. The Parties agreed to engage in a mediation in an attempt to resolve their disputes, and Judge Oetken entered a mediation referral order. (ECF No. 29).

The Parties exchanged all relevant documentation, including payroll and time records, punch tickets, and documents regarding an Investigation by the U.S. Department of Labor ("USDOL"), such that they were prepared to effectively mediate their dispute. The Parties participated in a mediation with SDNY mediator Chaim Book, Esq., on June 3, 2021. As discussed further below, the Parties engaged in lengthy discussions of fiercely contested issues during the mediation, including disputes over Pimentel's hours worked, the effect of the prior USDOL investigation, and whether Pimentel would be able to obtain penalties as a result of being paid on a bi-weekly basis. Following an over five-hour mediation session, the Parties reached an agreement to resolve Pimentel's claims for the total sum of $50,000.00. The Parties now jointly request that the Court approve their Agreement as a fair and reasonable resolution of a bona fide FLSA dispute.

## THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. In considering the fairness of a proposed settlement, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Siler v. Landry's Seafood House - N. Carolina, Inc.*, No. 13-CV-587 RLE, 2014 WL 2945796, at *7 (S.D.N.Y. June 30, 2014) (citation omitted). Where "the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (quoting *Siler*, 2014 WL 2945796 at *7). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair

---

[2] Defendants maintain that Pimentel never worked at Good Pal Chantelle, Good Pal Ravel, and Ravel Hotel.

2

and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

The Parties believe the settlement here is fair and reasonable under these factors.

## I. The Parties' Agreement is Fair and Avoids Substantial Litigation Risks

The Parties' Agreement requires Defendants to collectively pay a lump sum of $50,000.00 to resolve this Action, without any admission of liability. (Ex. 1 at § 3). After deduction of attorneys' fees and costs, Pimentel will receive $33,065.33. *Id.*

Pimentel's counsel calculated his alleged damages based on Pimentel's recollection of hours worked as alleged in his Complaint. Specifically, Pimentel's damages were calculated by Pimentel's counsel based on the time records from the period of December 2014 through July 2015 that were produced by Defendants and Pimentel's claim that he regularly worked between sixty one and sixty eight hours per week throughout the remainder of his employment with Defendants, and was paid on a salary basis of $800 or $900 per week. In light of these allegations, Pimentel's counsel relied on the NYLL's Hospitality Wage Order ("HWO")—which provides that an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week," 12 NYCRR § 146-3.5—to calculate Pimentel's overtime wage damages. Applying the presumption that his weekly salary compensated Pimentel for *only* the first forty hours worked per workweek, Pimentel's counsel calculated Pimentel's wage damages as $137,346 reflecting the full overtime premium and spread of hours owed..

Defendants have vigorously contested Pimentel's allegations with respect to his hours worked throughout this litigation, and prior to the mediation provided time records for the substantial majority of weeks worked by Pimentel at Amber Avalon and 163 Hope Street. Defendants' counsel calculated that based on the 71 week sampling of time records produced by Defendants from Plaintiff's employment at Amber Avalon, Plaintiff averaged only 33.7 hours per week and calculated that based on a 62 week sampling of time records produced by Defendants from Plaintiff's employment at 163 Hope Street (out of 69 total weeks), Plaintiff averaged only 34.28 hours per week. Thus, a substantial risk exists that even if Pimentel was successful is establishing that any wages are owed, the total would be substantially less than what he is able to obtain in this

settlement. Defendants also maintained that Pimentel did not work at three of the corporate Defendants, Good Pal Chantelle, Good Pal Ravel, and Ravel Hotel, *at all*. Further, Defendants presented evidence that Pimentel had received payment as a result of a prior USDOL investigation. According to the USDOL's Form WH-56, Pimentel received $1,645.37 in back wages for the period of May 11, 2013 through December 2, 2017 as part of a settlement, and Defendants contended that this USDOL settlement drastically reduced the amount of allegedly unpaid overtime that Pimentel could pursue since Pimentel was only employed for 44 weeks after the end of the DOL settlement period. Defendants further alleged that the USDOL's settlement will be persuasive in establishing that Pimentel is not entitled to the large amount of overtime which he seeks. Finally, Defendants have also set forth arguments as to why Pimentel may not be able to obtain damages due to bi-weekly payments. As a result, there are serious risks to Pimentel's ability to recover in this Action were litigation to continue. Pimentel's ability to establish that he worked the overtime hours alleged in his Complaint would require rebutting Defendants' time records and the USDOL's settlement, and would rest on a credibility determination by a fact-finder. Were Pimentel to fail in this respect, he would risk a near total loss of recovery under the FLSA.

Under the Agreement reached by the Parties, Pimentel will receive approximately 25% of his alleged unpaid wages, as calculated by his counsel *largely based on Pimentel's own recollections of hours worked and application of the HWO's forty-hour presumption*. Given the serious litigation risks discussed above, this is a substantial recovery representing a plainly reasonable compromise between the Parties over *bona fide* and sharply contested issues.

Moreover, absent their Agreement, the Parties would proceed through costly written discovery, depositions and later to trial, draining resources that are already strained and that Defendants have agreed to put towards the resolution of the Action. Were this Action to continue, Pimentel would not see recovery until after depositions, a trial, and appeals—and then only if he were to prevail. Moreover, even if Pimentel was able to succeed at trial and in any potential appeals, a risk of collection could result as both Amber Avalon and 163 Hope Street are no longer operating, and in light of the uncertain effect of the pandemic on the hospitality industry. Under the Parties' Agreement, Pimentel will see prompt recovery through Defendants' lump sum payment of $50,000.00.

In light of the above, the Parties respectfully request that the Court find that their Agreement is a fair and reasonable compromise of a *bona fide* FLSA dispute.

## II. The Allocation of Attorneys' Fees and Costs is Reasonable

Pimentel's counsel has spent significant time investigating the factual and legal issues raised in this Action (including investigation into the multiple corporate defendants and the bases for Pimentel's single integrated enterprise allegations), engaging defense counsel in prelitigation discussions, preparing Pimentel's Complaint, reviewing time and payroll records and USDOL files, drafting damages, and preparing for and engaging in mediation efforts. Pimentel's counsel has used its experience in

litigating wage-and-hour disputes to provide a positive result for Pimentel. In accordance with Pimentel's retainer agreement, attorneys' fees in this case are $16,934.67, equivalent to one-third of the total recovery after reimbursement of costs. The only cost in this Action is the $402 filing fee.[3]

The contingency fee in this case should be approved because it is the fee Pimentel agreed upon in his retainer agreement. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). Moreover, the one-third contingency is the fee which courts consider to be presumptively valid in FLSA cases. *See, e.g., Oxley v. Excellent Home Care Servs., LLC*, No. 18-CV-2374 (RJD)(CLP), 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) ("Settlements of a one-third percentage are typically found reasonable in this Circuit"); *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334 (RA), 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) ("A contingency fee award is presumptively valid where the proposed fee amount is exactly one-third of the net settlement amount[.]") (internal quotation and quotation marks omitted); *Marquez v. Roberto's Rest. Corp.*, No. 16-CV-2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. Nov. 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) ("A one-third contingency fee is a commonly accepted fee in this Circuit.") (internal citations omitted).

The award is also fair and reasonable in light of the favorable result obtained and the "considerable risk" PLG undertakes by representing plaintiffs in FLSA cases on a contingency fee basis. *See, e.g., Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *9 (S.D.N.Y. June 20, 2016) (noting risks associated with contingent fees in FLSA cases) (collecting cases). Further, PLG's lodestar of $22,100 to date in this matter is greater than the contingency fee. As such, the contingency fee in this case is fair and reasonable, and should be approved.

### III. The Agreement Satisfies All Other Factors Considered for Approval

The terms of the Agreement are otherwise consistent with *Cheeks*. The Agreement was reached following arm's-length negotiations between capable counsel and with the aid of a court-annexed mediator. Plaintiff's release is limited to wage-and-hour claims, and the Agreement does not contain a confidentiality provision. The mutual non-disparagement clause contains the required carve-out permitting Plaintiff to make truthful statements about his experience litigating this case. *See Mobley v. Five Gems Mgmt. Corp.*, No. 17 Civ. 9448 (KPF), 2018 WL 1684343, at *5 (S.D.N.Y. Apr. 6, 2018) (mutual non-disparagement clauses permissible where they "only restrain[] the parties from making false or defamatory statements that disparage the other side, and [] expressly permit[] Plaintiff to make statements relating to her experience in litigating [this] wage-and-hour case[.]") (internal quotation marks omitted).

---

[3] A copy of PLG's contemporaneous expense and billing records is attached as Exhibit 2.

## CONCLUSION

The Parties agree that the Agreement is fair and reasonable and should be approved by the Court. This settlement will enable the Parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses in further litigation. Continuing through pending discovery and trial would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter. A proposed stipulation and order of dismissal executed by the Parties is attached to the Parties' Agreement as Exhibit A.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

*s/ Galen C. Baynes*

Galen C. Baynes

cc: Counsel of Record (via ECF)

Exhibits